*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-324

FEBURARY TERM, 2013

| | | |
|---|---|---|
| In re T.T., Juvenile | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Lamoille Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 12-2-09 Lejv |

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Father appeals from an order of the superior court, family division, terminating his parental rights to the minor T.T. He contends the trial court erred in: (1) taking judicial notice of certain criminal records; and (2) relying on a substantiation by DCF that father had sexually abused another child. We affirm.

The material facts may be summarized as follows. T.T. was born in November 2003 and placed in mother's custody pursuant to a parentage order. A CHINS petition was filed in February 2009, after mother had left T.T. with father and his paternal grandfather for several months, based on reports that the child was neglected and not attending school regularly, and that father had recently been charged with several criminal offenses. The parties stipulated to a CHINS adjudication in May 2009, and thereafter the child was returned to mother's home and father was accorded supervised visitation. In September 2009, however, the child was taken into emergency detention and placed in foster care, where he has since remained.

Subsequent case planning again called for reunification with mother and supervised visits with father, observing that father suffered from significant mental health and substance abuse problems, and was currently incarcerated on offenses involving drug possession, burglary, and driving with a suspended license. Plan revision in August 2010 indicated that mother had failed to engage in services, and that father was facing additional charges of aggravated domestic assault while on probation for the previous offenses. The plan also noted that father refused to engage mental health services or parenting classes during the period when he was not incarcerated, and recommended that he engage in these and other counseling programs for substance abuse and domestic violence.

Father did not progress according to plan. During a supervised visit in November 2010, father became agitated and threatened a DCF worker. Thereafter, he refused to participate in supervised visits with T.T. He was subsequently re-incarcerated, and has largely remained in prison through the remainder of these proceedings on a number of convictions for driving offenses, violations of abuse prevention orders, and furlough and probation violations.

In August 2011, the State filed a TPR petition as to both parents. In November 2011, mother voluntarily relinquished her parental rights. After a contested hearing as to father's rights in February 2012, the court issued a written decision the following June. The trial court found that father had refused to participate in a variety of parenting, substance abuse, and domestic violence programs, had demonstrated no understanding of T.T.'s developmental needs and challenging social behaviors, and showed no insight into his responsibility for the child's problems. The court also found that father had refused to participate in supervised visits, had not seen the child for nearly a year and half prior to the hearing, had no positive relationship with the child, and had played no constructive role in his development.

Based on these findings, as well as father's extensive criminal record and history of failed supervision, the court concluded that father could not resume parental responsibilities within a reasonable period of time, nor maintain the sustained level of parental supervision and care required by T.T., even if he were released from prison at his earliest release date of mid-2013. The court observed that T.T. continued to struggle with behavioral issues in his current therapeutic foster placement and at school, but noted that DCF was attempting to find an appropriate adoptive home and permanent placement. Accordingly, the court granted the State's petition. This appeal followed.

Father contends the court erred in taking judicial notice of certain information relating to his criminal record. To obtain "relevant detail and record back-up" the court indicated that it had consulted the judiciary website to take judicial notice, pursuant to V.R.E. 201, of defendant's convictions and resulting sentences, as well as DOC records showing his incarcerative status and history. Defendant asserts that the records were not the properly subject of judicial notice.

We need not resolve the claim, however, because it is clear that any error in this regard was harmless. See In re G.F., G.F., & J.F., 2007 VT 11, ¶ 15, 181 Vt. 593 (mem.) (recognizing that "[o]ur harmless error standard for CHINS and termination of parental rights cases has been quite liberal"). Much of defendant's extensive criminal record was already a part of the record as set forth in the CHINS petition and the series of case plans and disposition reports prepared by DCF between July 2009 and August 2011. Although the court, in a footnote, described the additional detail obtained through judicial notice as "critical," the decision is based substantially on undisputed findings that father had completely failed to engage in services essential to the child's welfare, had played no constructive role in the child's life, and would be in no position to resume parental care and attend to the child's substantial needs when he was ultimately released from prison, either at his earliest release date in mid-2013 or earlier on furlough. Afforded an opportunity to point out any impropriety, inaccuracy or unfair prejudice in considering the documentation noticed by the court, father contested none of it. See V.R.E. 201(e), (lacking prior notice, hearing may be requested after fact to challenge "the propriety of taking judicial notice and the tenor of the matter noticed"). Nor is any prejudice made out now. Accordingly, there is no basis to conclude that any additional information obtained by the court through judicial notice played an undue role in the court's decision, and thus no grounds to disturb the judgment.

The same reasoning applies to father's claim that the trial court erred in relying on findings concerning a substantiation by DCF that he had abused mother's younger child by a different father. While father is correct that a substantiation of abuse by DCF requires a lower standard of proof than clear and convincing evidence, In re Selivonik, 164 Vt. 383, 388 (1995), the court here did not find that such abuse had occurred, but merely noted that father had

declined to undergo a psychosexual evaluation recommended by DCF. This issue played no significant role in the court's decision, which—as noted—was supported by numerous undisputed findings showing that he could not resume parental responsibilities within a reasonable time. Accordingly, any conceivable error was harmless. In re G.F., G.F., & J.F., 2007 VT 11, ¶ 15.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Brian L. Burgess, Associate Justice